GEORGIA,
Chatham Co.
MAY, 1808.

State
vs.
Campbell.

*Minutes of Superior Court, letter F. p.* 351. 523.

### The STATE *vs.* GEORGE CAMPBELL.

#### BLACK ACT.

THIS indictment is founded upon the 9th Geo. 1, common‑ly called the Black Act, passed 1722.

It was moved by *Mitchell* and *Bulloch*, to quash this indict‑ment for the following reasons :

1. Because the statute 9 Geo. 1, is inapplicable to our country, and contrary to the nature and genius of our go‑vernment.

2. Because the statute 9 Geo. 1, was a temporary statute, revived and made perpetual by a statute passed long after the period when the statutes of Great Britain could have any binding efficacy in this state.

3. Because we have an act passed by our own legislature, which sufficiently answers the purposes of stat. 9 Geo. 1, so far as it relates to malicious shooting.

Mr. *Leake*, Solicitor General, in opposing the motion, con‑sidered, that the stat. 9 Geo. 1, could never be considered as a temporary statute, for that that statute, and all the inter‑vening statutes reviving it, down to 24 Geo. 2, which per‑petuated 9 Geo. 1, was to be taken as one statute, upon the principle of the well known maxim of *pari materia :* and that the crime of malicious shooting at another, was not an offence confined to the local relations of any country ; but might be incorporated in the system of this, or any other na‑tion, without any violation of its government or policy. It punishes attempts at assassination. He considered the statute of 9 Geo. 1, as it relates to the crime of malicious shooting as part of the statute law of England, adopted at the colonization of this state, and as expressly revived by the act of Feb‑ruary, 1804.

*Charlton*, Judge.

GEORGIA,
Chatham Co.
MAY, 1808,

State
vs.
Campbell.

When the American colonies were *first* settled by our ancestors, it was held as well by the settlers, as by the judges and lawyers of England, that they brought hither as a birthright and inheritance, so much of the common law as was applicable to their local situation and change of circumstances. But each colony judges for itself what parts of the common law were applicable to its new condition, and in various modes, by legislative acts, by judicial decisions, or by constant usage, adopted some parts and rejected others. 2 Dal. 394.

In 1732 this state was settled by James Oglethorpe, and the 116 persons who came over from England with him ; and from that period the colonization of Georgia is to be dated. From that period we began to adopt such parts of the common and statute laws of England, as were applicable to the then relations of the colony. The government of the trustees assimilated itself, in the tenure of lands, to the feudal system, and in that respect deprived our ancestors of many of the benefits which they would have derived from the laws of England ; but the penal code of the mother country was still in force to the utmost that it could be applied to the relations of an infant colony.

Was the statute 9 Geo. 1, ever in force in this state as a colony, a province, or an independent republic ? Is it applicable to our present relations ?

It was observed by *Mitchell* and *Bulloch*, that the statute of 9 Geo. 1, never could have been in force, because that statute, as is discoverable from the preamble and the context, is founded upon a tender solicitude for the amusement and property of the aristocracy of England. It was made to protect from the violation or profanation of the people, the forest of his majesty or the park of the peer. How then could it apply to a country which was but one extended forest, in which the liberty of killing a deer, or cutting down a tree, was as unrestrained as the natural rights of the deer

GEORGIA,
Chatham Co.
MAY, 1808.

State
vs.
Campbell.

to rove, or the tree to grow : and where was the aristocracy whose privileges were to be secured ?

In this view of the statute, there was nothing left for its provisions to operate upon in this state.    It was therefore a local state, fit only for the internal polity of England.

I accede to this construction.    It is very evident from the reasons stated, that this statute was not applicable to the relations of the colony at its first settlement, and if not applicable at that period, its subsequent operation must depend upon some legislative or judicial recognition of it, neither of which can be found.

None of our reviving statutes can comprehend it by the utmost stretch or latitude of construction.    They refer to those statutes and principles of English law, which were applicable and in force.    The intention of the 9 Geo. 1, has been sufficiently explained ; that intention is deducible from the preamble, and the preamble of an act is in general a good mark to come at the meaning of the legislature.    I am disposed, in this case, to resort *exclusively* to the preamble for the *intention ;* for this law is not only penal to a feudal degree, but it is productive of tyranny.    I shall give my consent to narrow the construction.    1 Durn. and East, 49.

I cannot agree with Mr. Solicitor *Leake,* that one part of this statute can be considered as applicable, and the rest not so.    Mr. *East* says, that in the construction of that branch of the statute, which refers to malicious shooting at any person, or the rescuing any person in custody for that offence, it has been holden that it has no relation to the preceding part of the clause ; and in confirmation of this he cites the case of Rex *vs.* Arnold, 8 State Trials, 290. 213, as approved by all the judges. 1 East, 412.

This rule of demarkation may be drawn by the English judges, but it cannot be drawn here ; we cannot, as it was observed by my brother *Mitchell,* cull this flower or that flower of the English statutory law, and (to pursue the metaphor) make a pleasant bouquet of the whole.

We must adopt the statute *en masse*, or not at all : legis-
lative wisdom may *select*, but judicial discretion cannot.

I consider, that our own statute is sufficiently penal to
guard against any personal injury or mayhem which may result
from malicious shooting, and perhaps the indictment for an
assault, with intent to murder, may always inflict a punish-
ment equal to the nature of the offence.   This mode of pro-
secution is recommended in the present case.

It is ordered that the indictment be quashed.

GEORGIA,
Chatham Co.
MAY, 1808.

State
vs.
Campbell.

*Mr. Solicitor Leake*, for the state.

*Mitchell* and *Bulloch*, for prisoner.